UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

    Vickie L. Cady, d/b/a
    Lake View Farm
                    Debtor.

Case No. 10-30737

Chapter 12

_____

Appearances:

| | |
|---|---|
| Antonucci Law Firm<br>Attorneys for Debtor<br>12 Public Square<br>Watertown, New York 13601 | David P. Antonucci, Esq. |
| Getnick, Livingston, Atkinson & Priore, LLP<br>Attorneys for CVM Partners 1, LLC<br>258 Genesee Street<br>Utica, New York 13505 | Patrick G. Radel, Esq. |
| Chapter 12 Trustee<br>250 South Clinton Street<br>Suite 203<br>Syracuse, New York 13202 | Lynn Harper Wilson, Esq. |

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER DENYING RELIEF FROM STAY AND DIRECTING DEBTOR TO FILE PLAN BY DECEMBER 7, 2010

      CVM Partners 1 ("CVM") has moved for relief from the automatic stay "for cause" pursuant to 11 U.S.C. § 362(d)(1) (Docket No. 8) with respect to certain real and personal property (collectively, "Property") that support the farming operation of Vickie L. Cady, d/b/a Lake View Farm ("Debtor"). The Property secures certain debt obligations owed to CVM by Debtor's late father-in-law, Charles F. Cady. In its motion, CVM argues that Debtor cannot

1

retain the Property which comprises its collateral and utilize the provisions of chapter 12[1] to modify the debt because Debtor is not the obligor under the loan agreements. CVM claims that the Property was transferred without lender authorization and that Debtor cannot cure the defaults of the deceased obligor. Debtor opposes the relief sought claiming that the Property is property of the estate, that the obligations securing the Property may properly be addressed in this proceeding and that the Property is critical to the family farming operation and her reorganization (Docket No. 12). The issue squarely presented is whether this chapter 12 debtor may cure prepetition defaults and reorganize the loan obligations owed to CVM even though Debtor lacks privity of contract with CVM. Pending decision by this court, the parties agreed to an interim order providing for monthly adequate protection payments by Debtor to CVM in the amount of $1,000. The parties filed a Joint Stipulation of Facts (Docket No. 28) and other pleadings including memoranda of law in support of their respective positions (Docket Nos. 17, 18, 19, and 23). This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052, made applicable by Fed. R. Bankr. P. 9014(c).

## JURISDICTIONAL STATEMENT

This court has core jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(G).

## BACKGROUND FACTS

The court makes the following findings based upon the pleadings of record and the proceedings to date in this case. On March 25, 2010, Debtor filed a voluntary petition for relief under chapter 12 of the Bankruptcy Code on behalf of herself d/b/a/ Lake View Farm, a family

---

[1] Referring to chapter 12 of the United States Bankruptcy Code, 11 U.S.C. §§1 – 1532 (2010) ("Bankruptcy Code" or "Code").

2

dairy farm located in Jefferson County, New York (the "Farm"). Debtor operates the Farm full time with the help of her husband, Charles T. Cady. The Farm has been in the Cady family for at least three generations. Debtor and her husband had previously farmed elsewhere, but in 1987 returned to the Farm to work alongside their aging parents. By year 2000 Debtor was devoting her full energies to the Farm and, by 2005, she and her husband had assumed complete responsibility and control for the Farm's operation, including managing its revenue and expenditures.

In anticipation of providing a right of succession to the family farm, Charles F. and Joyce Cady (together, the "Cadys") established in May 1997 the Cady Family Trust, which was amended and restated in 2004 ("Trust"). The Trust provided that upon the death of both Charles F. and Joyce Cady, all property pertaining to the Farm would transfer to Debtor and her husband or their issue.

In 2004, at a time when Charles F. Cady still managed the farming operations, he executed two notes in favor of HSBC Bank USA, N.A. ("HSBC Bank"). The first, executed on March 22, 2004, acknowledged indebtedness in the principal amount of $108,552.00 ("Note I"). The second, executed on April 23, 2004, recognized a business line of credit not to exceed $10,000.00 ("Note II"). Charles F. Cady is the sole obligor under both Note I and Note II (collectively, the "Notes"). No contemporaneous mortgage or security agreement was executed to secure these loans. Rather, the Notes are secured by security agreements and mortgages previously executed by the Cadys in favor of HSBC Bank, which gave HSBC Bank a first-

priority security interest in the Property and included a general pledge covering future indebtedness.[2]

As Charles F. Cady's health began to fail, Debtor and her husband gradually began to take over farming operations. As part of this transition, and, notwithstanding the terms of the Trust which provided that the Property would fully vest in Debtor and her husband upon the Cadys' death, the Cadys, as trustees, transferred in advance of death certain of the Property including real estate and livestock to Debtor and Charles T. Cady.[3] Charles F. Cady died on September 23, 2008, eighteen months before Debtor filed her petition and three years after he relinquished control of the Farm. Joyce Cady, who retired from the Farm's operation alongside her husband, remains inactive. She neither exerts control over the assets of the Farm, nor has she made any claim to the assets.

Both parties acknowledge that HSBC Bank did not give written consent to the transfer of the Property into the Trust nor the transfer by the Trust to Debtor and her husband as required by the loan documents.[4] On June 27, 2008, HSBC Bank assigned its rights with respect to the Notes and the related mortgage and security agreements to CVM. As successor-in-interest to HSBC Bank, CVM holds a valid, first-priority security interest in the Property.

---

[2] These mortgages and security agreements were executed over a span of forty years, between 1962 and 2002. They secure the specific debts referenced therein and include general provisions extending the lien to secure all debt incurred thereafter. See Exhibits B-H filed at Docket No. 8.

[3] Over two hundred acres of farmland were transferred to Debtor and her husband pursuant to a deed executed on November 9, 2004, which was recorded with the Jefferson County Clerk on November 15, 2004. Certain livestock was also transferred to Debtor and her husband pursuant to a Bill of Sale dated January 10, 2002. See "Warranty Deed With Lien Covenant" and "Bill of Sale" filed at Docket No. 17.

[4] Debtor's counsel avers, however, that Rick Porter of HSBC Bank verbally consented to these transfers provided that "no money changes hands" and the collateral was not converted. See "Supplemental Answering Affidavit" filed at Docket No. 13. In light of the hearsay nature of this testimony, the court does not accord it any weight in deciding the issue before the court.

## DISCUSSION

Congress has long provided the family farmer with special protections in bankruptcy legislation.[5] This was demonstrated most recently by Congress' permanent extension in 2005 of the family farmer provisions of chapter 12 of the Bankruptcy Code.[6] Chapter 12 tailors the bankruptcy process to facilitate the reorganization of family farms.[7] Under these provisions, the issue is whether Debtor may address the Notes in a chapter 12 plan where Debtor's deceased father-in-law was the sole obligor underlying those secured loans.

As a primary matter, the Property must be property of the estate if it is to be addressed in a chapter 12 plan. Thus, the threshold question is whether the Property subject to CVM's motion constitutes property of the estate, as "[o]wnership is a necessary prerequisite to the existence of a…claim against the estate."[8] The parties stipulated that the Cadys transferred the real property and livestock to Debtor and her husband as part of their estate planning measures. Although HSBC Bank did not consent to the transfer, the court finds that the real and personal property transferred in connection with the Cadys' estate planning is now owned by Debtor and her husband and constitutes property of the estate pursuant to Section 541(a).[9]

---

[5] *See, e.g.*, Act of July 1, 1898, ch. 541 30 Stat. 544 (repealed as amended 1978); Act of March 3, 1933, ch. 204, § 75, 47 Stat. 1467, 1470-73 (repealed as amended 1978).

[6] Section 1001(b) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 186, makes a conforming amendment to section 302 of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, 100 Stat. 3088 to eliminate the sunset provision contained in the original chapter 12 law.

[7] *See generally* Katherine M. Porter, *Phantom Farmers: Chapter 12 of the Bankruptcy Code*, 79 Am. Bankr. L.J. 729, 737 ("The exact purpose of Chapter 12 is to provide a unique and limited set of laws that are tailored to aid a subset of a particular industry. Chapter 12 was intended to be more generous to debtors than the other options under the Bankruptcy Code…"); David Ray Papke, *Rhetoric and Retrenchment: Agrarian Ideology and American Bankruptcy Law*, 54 Mo. L. Rev. 871 (1989).

[8] *In re Cogar*, 210 B.R. 803, 810 (9th Cir. B.A.P. 1997).

[9] The mortgages executed on October 22, 1970 and April 22, 1976 contain due-on-sale clauses, which provide that the entire principle amount becomes due and owing upon a sale of the collateral without mortgagee's written consent. Although no written consent was provided by HSBC Bank, these due-on-sale clauses are unenforceable. The Garn-St Germain Depository Institutions Act provides an exception to the enforceability of clauses where property is transferred between the borrower and his children. *See* 12 U.S.C. § 1701j-3 (2010) (providing "a lender may not exercise its option pursuant to a due-on-sale clause upon… a transfer where the spouse or children of the borrower become an owner of the property…"). Because the Cadys transferred the Property to their son and

Furthermore, Debtor and her husband's ownership interest in those portions of the Property not formally transferred also constitute property of the estate. Congress intended property of the estate to include all legally cognizable interests.[10] Courts in this circuit have long held that a remainder interest, whether considered contingent or vested subject to divestment, constitutes property of the debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1).[11] Pursuant to the Trust, Debtor and her husband hold a remainder interest in the Property.[12] In accordance with well-established case law, such ownership interest in the remainder of the Property not formally transferred is also property of the estate.

Having determined that the Property constitutes property of the estate, the court now turns to the issue of whether a chapter 12 debtor who lacks contractual privity with the mortgagee may repay a mortgage lien through its plan.[13] Section 1222(b) provides that a reorganization plan may modify the rights of creditors holding a "claim" against the estate. Therefore, the resolution of this issue hinges on the breadth of the term "claim."

---

daughter-in-law, and in light of the Garn-St. Germain Act, the due-on-sale clauses contained in the aforementioned mortgages are unenforceable.

[10] The Second Circuit states, "It would be hard to imagine language that would be more encompassing than this broad definition... Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. Conn. 2008) (citing 4 Collier on Bankruptcy P 541.01 (15th ed. 2001).

[11] See, e.g., Tuffy v. Nichols, 120 F.2d 906 (2d Cir. 1941) (holding debtor's remainder interest subject to a life estate was an asset of the debtor at the time bankruptcy was filed and therefore should properly be administered by the bankruptcy trustee for the benefit of creditors); In re Kreiss, 72 B.R. 933 (Bankr. E.D.N.Y. 1987) (holding debtor's remainder interest in a trust subject to a life tenancy are alienable interests that passed to the bankruptcy trustee upon commencement of the bankruptcy case); In re Crandall, 173 B.R. 836 (Bankr. D. Conn. 1994) (holding debtor's interest in a revocable living trust was property of the bankruptcy estate). This view is also consistent with the those taken by courts in other circuits. See e.g. Parks v. Dittmar (In re Dittmar), 2010 U.S. App. LEXIS 19132 (10th Cir. Sept. 14, 2010) (finding contingent interests are property of a bankruptcy estate even if the rights do not accrue or are uncertain until a date after the bankruptcy filing); In re Ryerson, 739 F.2d 1423, 1425 (9th Cir. 1984) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 175-76 (1997), reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6136 to find that "Congress intended "property of the estate" to include all legally recognizable interests although they may be contingent and not subject to possession until some future time.").

[12] See Docket No. 23.

[13] In Rake v. Wade, 508 U. S. 464 (1993), the Supreme Court held that "[Section] 1322(b)(5) authorizes a debtor to cure a default on a home mortgage by making payments on arrearages under a Chapter 13 plan." Because chapter 13 and chapter 12 share common policy goals, case law under chapter 13 is applicable in this matter. See In re Kerwin, 996 F.2d 552, 559 (2d Cir. 1993) ("Congress based chapter 12 on chapter 13 in order to provide a bankruptcy process for family farmers similar to that available under chapter 13.").

The Supreme Court set forth a broad interpretation of the term "claim" in the unanimous *Johnson v. Home State Bank* decision.[14] The debtor in *Johnson* initially filed a chapter 7 petition to prevent foreclosure of his farm. Although the debtor received a discharge, the mortgagee bank continued to pursue a foreclosure action in state court, which prompted the debtor to file a chapter 13 petition prior to the date of the foreclosure sale. The plan proposed payments to the mortgagee bank through the plan. The issue before the Supreme Court in *Johnson*, was whether a debtor could include a mortgage lien in his chapter 13 plan and cure the arrears despite the fact that the debtor's personal obligation was discharged in a prior chapter 7 proceeding. The court explained that while there are two methods of enforcing a claim, *in personam* and *in rem* actions, a bankruptcy discharge severs only the *in personam* means of enforcement.[15] As a result, the court concluded that "Congress fully expected that an obligation enforceable only against a debtor's property would be a 'claim' under § 101(5) of the Code."[16]

In the context of chapter 13, the majority of courts addressing the issue within the Second Circuit have allowed a debtor to pay a claim through the plan even if the debtor is not personally liable for the debt.[17] Relying on the *Johnson* decision, courts have allowed the debtor to cure mortgage arrears through their chapter 13 plan despite a lack of contractual privity.[18]

---

[14] *Johnson v. Home State Bank*, 501 U.S. 78 (1991).
[15] *Johnson*, 501 U.S. at 84.
[16] *Id.* at 86.
[17] *See, e.g., In re Finley*, Case No. 03-62212 (Bankr. N.D.N.Y. Jan. 9, 2004); *In re Owens*, Case No. 02-63751 (Bankr. N.D.N.Y. Jan. 29, 2003); *In re Rutledge*, 208 B.R. 624 (Bankr. E.D.N.Y. 1997); *In re Lumpkin*, 144 B.R. 240 (Bankr. D.Conn. 1992); *In re Allston*, 206 B.R. 297 (Bankr. E.D.N.Y. 1997). The two courts that have not permitted a debtor to address a claim in absence of privity of contract are factually distinguishable and both raised issues of bad faith. *See In re Kizelnik*, 190 B.R. 171 (Bankr. S.D.N.Y. 1995) (finding no right to address a mortgage in absence of privity where debtor previously filed two bankruptcy petitions, one dismissed with prejudice for bad faith, and where the sole purpose for filing the third petition was to prevent the fourth foreclosure sale); *In re Parks*, 227 B.R. 20 (Bankr. W.D.N.Y. 1998) (finding no right to address a mortgage in absence of privity where in a last-ditch effort to save his father's mortgaged property from foreclosure, debtor transferred the property to himself and filed for bankruptcy relief later that same day).
[18] *See, e.g., Rutledge*, 208 B.R. at 624-29; *Lumpkin*, 144 B.R. at 240-42.

The Bankruptcy Court for the Eastern District of New York was presented with this issue in *In re Rutledge*.[19] In *Rutledge*, a relative transferred title of residential real property to the debtor without the mortgagee's consent. Years after the relative passed away, the debtor defaulted on the mortgage payments. Since the debtor never formally assumed the mortgage, the mortgage holder learned of the transfer as it prepared to commence a foreclosure action. The mortgagee moved to dismiss the case or, in the alternative, terminate the automatic stay on the ground that the debtor did not owe a debt on the mortgage. The *Rutledge* court found that the *Johnson* decision "mandates" the conclusion that "a transferee-debtor who is not the original obligor under a mortgage, and who is without any personal liability under the mortgage may still treat the claim of the mortgage arrears in a chapter 13 plan."[20] The *Rutledge* court adopted the reasoning utilized in *In re Allston*,[21] finding that: "(i) the debtors own the property as to which [the mortgagee] holds a lien; (ii) the property is 'property of the estate;' and (iii) it therefore follows that [the mortgagee] holds a 'claim' against the debtors within the meaning of Section 102(2) and 502(b) of the Bankruptcy Code, to the extent that [the mortgagee] asserts a claim against the property."[22]

The majority of courts outside the Second Circuit similarly recognize a debtor's right to cure prepetition mortgage defaults through a chapter 13 plan even though that debtor lacks contractual privity with the mortgagee.[23] The Bankruptcy Court for the Middle District of Florida was presented with this issue in *In re Curinton*. Unlike *Rutledge* and *Lumpkin*, *Curinton* did not involve an intra-family transfer of property. However, the chapter 13 debtor in *Curinton*

---

[19] *Rutledge*, 208 B.R. at 624-629.
[20] *Id.* at 628 (citing Johnson, 501 U.S. at 85 and *In re Hutcherson*, 186 B.R. 546 (Bankr. N.D.Ga. 1995)).
[21] *Allston*, 206 B.R. at 297-300.
[22] *Rutledge*, 208 B.R. at 628-29.
[23] *See, e.g., In re Curinton*, 300 B.R. 78 (Bankr. M.D.Fla. 2003); *In re Trapp*, 260 B.R. 267 (Bankr. D.S.C. 2001); *Hutcherson*, 186 B.R. at 546-50; *Cogar*, 210 B.R. at 803-12.

lacked privity with the mortgagee. The *Curinton* court provided a detailed analysis of the split among the courts regarding the issue and explained that the difference arises from how broadly the courts interpret the term "claim."[24] The *Curinton* court followed the predominant view that the *Johnson* decision permits a debtor to include a claim in a plan even in the absence of privity, making clear that "it is sufficient that a debtor owns property against which a creditor holds a lien for that property to be included in the debtor's bankruptcy estate."[25]

This court aligns itself with the predominant view that the Supreme Court's *Johnson* decision permits a debtor's plan to include a claim even in the absence of personal liability to the creditor. The facts in the present case appear most analogous to the facts in *Rutledge* and *Lumpkin*. The family farm in the present case, similar to the primary residences in *Rutledge* and *Lumpkin*, was transferred without the mortgagee's consent. Debtor, who operates the Farm with her husband, filed a petition for bankruptcy relief in an effort to save her principal asset, just as the debtors in *Rutledge* and *Lumpkin* sought bankruptcy protection to retain their homestead. Debtor seeks to reorganize debts in order to continue operation of the dairy farm that has been in the Cady family for three generations, as envisioned by her father- and mother-in-law.

This court remains cognizant of the Supreme Court's refrain in *Johnson*, "[W]e do not believe that Congress intended the bankruptcy courts to use the Code's definition of 'claim' to police the chapter 13 process for abuse,"[26] and also acknowledges the *Curinton* court's assessment of the type of bad faith filing illustrated in *Kizelnik*. The *Curinton* court encouraged bankruptcy courts presented with similar cases to deny confirmation due to bad faith rather than adopt a blanket rule requiring privity of contract between the debtor and mortgagee. The *Curinton* court argued that "[a]dopting a policy of universal exclusion of *in rem* claims fails to

---

[24] *Curinton*, 300 B.R. at 80-84.
[25] *Id.* at 84.
[26] *Johnson*, 501 U.S. at 88.

9

serve honest debtors who have fallen behind in payments but who honestly intend to pay the arrearage and keep their homes."[27] However, as no facts have been developed in the present case to provide any indicia of a bad faith attempt to restructure debt, this court need not dwell on that concern at this stage of the proceeding.

Although the debtors in *Rutledge* and *Lumpkin* filed for relief under chapter 13, chapter 13 and chapter 12 share common policy goals, making case law under chapter 13 applicable in this matter. In fact, "Congress based chapter 12 on chapter 13 in order to provide a bankruptcy process for family farmers similar to that available under chapter 13."[28] As such, this court adopts the reasoning set forth in the *Johnson* decision as applied to similar scenarios in the *Rutledge* and *Lumpkin* decisions.

## CONCLUSION

For the foregoing reasons, the court finds that the Property is property of the estate and that liens encumbering the Property are claims against the estate which the Debtor may address in her chapter 12 plan. This court's decision should be read as limited to holding that there is no *per se* prohibition on Debtor's ability to propose a chapter 12 plan that seeks to address CVM's liens encumbering the Property. The court makes no findings on the present record regarding good faith, adequate protection or Debtor's prospects for a successful reorganization. CVM's right to press an objectioin on these grounds in the context of confirmation or otherwise is hereby preserved.

---

[27] *Curinton*, 300 B.R. at 86.
[28] *Kerwin*, 996 F.2d at 559.

10

Accordingly, CVM's motion for relief from the automatic stay is presently denied. Since the pendency of this motion, the trustee has moved for a Conditional Order of Dismissal based upon Debtor's failure to submit a plan ("Motion" at Docket No. 26). Debtor is hereby directed to file a reorganization plan by not later than December 7, 2010. A hearing on the trustee's Motion is adjourned to this court's calendar of December 14, 2010 at 10:00 a.m.

So ordered.

Dated: November 22, 2010  
       Syracuse, New York

Hon. Margaret Cangilos-Ruiz  
United States Bankruptcy Judge